```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
NEERESHA ADAMS,                         :
                                        :
                        Plaintiff,      :       23cv10574 (DLC)
              -v-                        :
                                        :          OPINION AND
NEW YORK COUNTY DISTRICT ATTORNEY'S     :             ORDER
OFFICE, et al.,                         :
                                        :
                        Defendants.     :
                                        :
--------------------------------------- X
```

APPEARANCES:

For plaintiff:

Alyssa Nina Grzesh
Bingyang Zhang
Jillian Tattersall
Marshall Benjamin Bellovin
Ballon Stoll PC
810 Seventh Avenue
Ste 405
New York, NY 10019

Steven Balken
FordHarrison LLP
336 Madison Avenue, 7th Floor
New York, NY 10017

For defendants:

Jennifer Suzanne Smith
Law Offices of Jennifer Smith
One Liberty Plaza
165 Broadway, 23rd Floor
New York, NY 10006

DENISE COTE, District Judge:

Plaintiff Neeresha Adams has sued the New York County

District Attorney's Office ("DANY") and the City of New York for

disability discrimination based on a failure to accommodate. Although her position as a Victim Notification Specialist ("Specialist") required at least some of her work to be performed in DANY's offices, she asserts that she should have been permitted to work remotely full time.  For the reasons below, the defendants' motion for summary judgment is granted.

## Background

The following facts are taken from the documents submitted in connection with this motion.  Only those facts necessary to decide the parties' motions are stated.  The following facts are undisputed unless otherwise noted.

Adams was employed as Specialist in the Witness Aid Services Unit ("WASU") of DANY from January 2016 until she resigned on October 8, 2021.  Specialists have job responsibilities that require them to be physically present in the DANY offices.  Each Specialist has an individual docket of cases for which the Specialist is solely responsible. Specialists contact victims and witnesses and mail, fax, and email their supporting depositions and affidavits to them.  For confidentiality reasons, after the individual signs the document the documents are mailed back to DANY; they may not be mailed to any other address.  Upon the document's return to DANY offices, the Specialist processes the documents for submission to court.

The Specialist organizes the returned documents, applies a barcode and scans the documents for imaging.

Specialists also handle "bad mail", that is mail returned to DANY because of incorrect addresses, by working with assistant district attorneys to re-mail the documents with the correct address. The job description that Adams signed explained that Specialists handle a heavy workload that includes crisis calls. They are expected to possess a strong attention to detail and to follow up when necessary, and to engage professionally in their interactions with victims, witnesses and law enforcement.

Due to the COVID-19 pandemic, Specialists were permitted to work remotely from March until May 2020. During this time, witnesses and victims signed depositions and affidavits electronically. Specialists were still required, however, to process the mail, print depositions and affidavits, and apply barcodes to the documents for imaging. A backlog of unprocessed mail accumulated during this time, and in May DANY required Specialists to begin to return to DANY to work in-person.

In September and October of 2020, the Governor lifted suspensions of time limits in criminal cases that he had put in place due to the pandemic. Once again, prosecutors had five

3

days to charge arrested defendants and 60 or 90 days to be prepared for trial, depending on the level of the offense.

During the period between March 2020 and October 2020, Adams worked in person on May 26, June 11, July 14 and July 30. In August 2020, Adams requested to work in person on Mondays due to her father's ability to transport her to work on those days. That request was granted and she worked in person on five Mondays between August 10 and September 21.  Due to its needs for Specialist services, DANY asked Adams to come in two days a week, which she declined to do.  As of October 1, DANY began scheduling Adams for in person work on two days of the week. Adams then called in sick on October 1, 5, 6, 7, and 15.  DANY then scheduled a meeting with Adams, which her union representative attended.

On October 20, Adams submitted an accommodation request on DANY's Human Resources ("HR") portal for continued telework. She explained that she had high BMI and secondary chronic hypertension, which put her at an increased risk for a severe COVID-19 infection.  She was also experiencing anxiety after losing family members to the disease.

In an October 28 meeting with Adams, the HR Director and the Equal Employment Officer ("EEO") informed Adams that employees in certain roles needed to be in the office to perform

4

some or all of their duties but that Adams would be granted leave under the Families First Coronavirus Response Act/Family and Medical Leave Act ("FFCRA/FMLA").  Under that program, Adams was granted ten days of excused leave to use on days she was scheduled to work in the office.  Upon running out of FFCRA/FMLA leave, Adams was allowed to use sick leave, annual leave, and advanced annual leave from future years to work remotely on in-person days.  Adams did not object to this decision or ask to appeal the decision.

Adams used ten days of FFCRA/FMLA leave between November 2 and December 18 and then used 44 sick days and 56 annual leave days between December 18 and October 8, 2021.  On October 8, 2021, she resigned.  In a declaration submitted in opposition to this motion, Adams states when she was using leave for in-person days, DANY only permitted her to work approximately one day per week between November 2020 and her resignation.

On November 6, 2020, Adams filed a charge of discrimination against DANY with the New York State Division of Human Rights ("SDHR") and the Equal Employment Opportunity Commission ("EEOC").  The EEOC issued a Right to Sue Letter on January 22, 2023, which DANY stamped as received on January 25.  Adams asserts that she did not receive the Letter until September 5, after multiple inquiries made by her counsel to the EEOC.

This action was filed on December 4, 2024, against DANY and the City of New York ("City").[1]  The complaint asserts claims of discrimination based on a failure to accommodate under the ADA, NYSHRL, and NYCHRL, as well as a retaliation claim under the ADA.  See 42 U.S.C. § 12101 et seq. ("ADA"); N.Y. Exec. § 290 et seq. ("NYSHRL"); N.Y.C. Admin. Code § 8-107 et seq. ("NYCHRL").  Following the completion of discovery, the defendants filed this motion for summary judgment on May 30.  The motion became fully submitted on October 17.

## Discussion

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those that "might affect the outcome of the suit under the governing law."  Choi v. Tower Rsch. Cap., LLC, 2 F.4th 10, 16 (2d Cir. 2021) (citation omitted).  Summary judgment must be rejected if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."  Indemn. Ins. Co. of N. Am. v. Unitrans Int'l Corp., 98 F.4th 73, 77 (2d Cir. 2024) (citation omitted).  A

---

[1]  DANY is not a suable entity.  See Ying Jing Gan v. City of New York, 996 F.2d 522, 536 (2d Cir. 1993).  Adams does not argue otherwise in her opposition brief.  Summary judgment is granted on all claims brought against DANY.

court's role with respect to a summary judgment motion "is not to resolve disputed questions of fact but solely to determine whether, as to any material fact, there is a genuine issue to be tried." Moll v. Telesector Res. Grp., Inc., 94 F.4th 218, 227 (2d Cir. 2024) (citation omitted). The court must "review the record taken as a whole," and "may not make credibility determinations or weigh the evidence." Id. (citation omitted).

The defendants contend that the discrimination and retaliation claims should be dismissed because Adams could not perform essential functions of her job from home, no adverse action was taken against her for filing an accommodation request, and because they reasonably accommodated Adams. The City has shown that the undisputed facts entitle it to summary judgment.

The ADA prohibits discrimination "against a qualified individual" in the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). This provision "requires employers to take certain affirmative steps to assist employees with disabilities," which include reasonably accommodating "the known physical or mental limitations of an otherwise qualified individual unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business." Bey v. City of New York, 999 F.3d 157, 165 (2d

Cir. 2021) (quoting 42 U.S.C. § 12112(b)(5)(A)); see also N.Y. Exec. § 296(3)(a)-(b) (same standard under NYSHRL).  An undue hardship is "an action requiring significant difficulty or expense" for the employer considering "the nature and cost of the accommodation" as well as the employer's "overall financial resources" and "type of operation."  42 U.S.C. § 12111(10).

Disability discrimination claims under the ADA and the NYSHRL as well as ADA retaliation claims are subject to the burden-shifting framework first set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Tafolla v. Heilig, 80 F.4th 111, 118, 125 (2d Cir. 2023).  At the first step of that framework, the plaintiff bears the burden to establish a prima facie case.  Id.

The plaintiff may establish a prima facie case of disability discrimination under the ADA or the NYSHRL by showing that

> (1) the employer is subject to the ADA, (2) the employee is disabled or is perceived to be disabled as defined by the ADA, (3) the employee is qualified to perform the essential functions of the job, with or without reasonable accommodations, and (4) the employee suffers an adverse employment action because of [their] disability.

Sharikov v. Philips Med. Sys. MR, Inc., 103 F.4th 159, 166 (2d Cir. 2024); Tafolla, 80 F.4th at 119 (NYSHRL).  A plaintiff may establish a prima facie case of a failure to accommodate by

8

showing for the fourth element that their "employer refused to make a reasonable accommodation." Tudor v. Whitehall Cent. Sch. Dist., 132 F.4th 242, 246 (2d Cir. 2025) (citation omitted).

In determining whether a plaintiff could perform the "essential functions" of the job with a reasonable accommodation, courts conduct a "fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice" and, in doing so, "draw all inferences in favor of the non-moving party." Tafolla, 80 F.4th at 119 (citation omitted). Essential functions are "fundamental duties to be performed in the position" and are not "functions that are merely marginal." Id. (citing 29 C.F.R. § 1630.2(n)(1)). "[A] court must give substantial deference to an employer's judgment as to whether a function is essential to the proper performance of a job." Williams v. MTA Bus Co., 44 F.4th 115, 133 (2d Cir. 2022) (citation omitted). Additional factors include "written job descriptions, the amount of time spent on the job performing the function, the mention of the function in a collective bargaining agreement, the work experience of past employees in the position, and the work experience of current employees in similar positions." McMillan v. City of New York, 711 F.3d 120, 126 (2d Cir. 2013) (citation omitted). Ultimately, "the question whether a task constitutes an essential function

depends on the totality of the circumstances." Tafolla, 80 F.4th at 119 (citation omitted).

Reasonable accommodations include "modifications or adjustments" that enabled a disabled employee "to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(1)(iii). "A reasonable accommodation can never involve the elimination of an essential function of a job." McMillan, 711 F.3d at 127 (citation omitted).

Under the NYCHRL, an employer may not discriminate against an employee "because of actual or perceived" disability "in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a)-(a)(3). It is unlawful for an employer "not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." Id. § 15(a). "In any case where the need for reasonable accommodation is placed in issue, it shall be an affirmative defense that the person aggrieved by the alleged discriminatory practice could not, with reasonable accommodation, satisfy the essential requisites of the job." Id. § 15(b).

The Second Circuit has observed that "even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards" set forth in the NYCHRL.  Williams, 44 F.4th at 137 (citation omitted).  Nonetheless, "under the NYCHRL, like the ADA, a plaintiff bringing a disability discrimination claim in the employment context must be able to perform the essential functions of the job with or without accommodations."  Id.

The ADA also prohibits employers from retaliating against employees.  Employers may not take an "adverse action against an employee for engaging in protected activity."  Sharikov, 103 F.4th at 170 (citation omitted); see also 42 U.S.C. § 12203(b).

The plaintiff may establish a prima facie case of retaliation under the ADA by showing that

> (i) a plaintiff was engaged in protected activity;
> (ii) the alleged retaliator knew that plaintiff was
> involved in protected activity; (iii) an adverse
> decision or course of action was taken against
> plaintiff; and (iv) a causal connection exists between
> the protected activity and the adverse action.

Tafolla, 80 F.4th at 125 (citation omitted).  "[S]eeking reasonable accommodation" of a disability is a protected activity.  Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 149 (2d Cir. 2002).  An adverse action is "any action that could well dissuade a reasonable worker from making or

supporting a charge of discrimination, and covers a broader range of conduct than does the adverse-action standard for claims of discrimination." Sharikov, 103 F.4th at 170 (citation omitted). A plaintiff may demonstrate that she suffered an adverse action by showing "a materially adverse change" in her employment, which may be indicated by "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (citation omitted).

"To prove a causal connection, a plaintiff must show that 'but for' the protected activity, the adverse action would not have been taken." Sharikov, 103 F.4th at 170 (citation omitted). "Causation may be shown either through direct evidence of retaliatory animus or indirectly, by showing that the protected activity was followed closely by discriminatory treatment." Id. (citation omitted).

A.    Disability Discrimination

The City is entitled to summary judgment on Adams's ADA and NYSHRL disability discrimination and failure-to-accommodate claims because Adams has admitted that essential functions of

12

her job cannot be performed from home.  Adams admits that Specialists are required to process depositions and affidavits in person in DANY's offices and cannot receive or handle that mail from home due to confidentiality requirements.  Adams's NYCHRL claim fails as well.  Her admission that core aspects of a Specialist's duties must be performed in person are fatal to her claim.

In opposition to this motion Adams relies on the fact that between March and May 2020, during the height of the pandemic, Specialists were permitted to work remotely, and from May to September 2020 they were permitted to work remotely part-time. The extraordinary dislocations that the COVID-19 pandemic caused businesses throughout the City for some months of 2020 does not alter the fact that essential functions of a Specialist's job needed to be performed in person.  And, once the Governor lifted his suspension of certain criminal speedy trial deadlines, it became even more critical that those essential functions be timely performed at DANY.  Adams does not dispute any of these facts and therefore her reliance on the flexibility shown by DANY to its staff during the early stages of the pandemic does not suggest that the City has failed to carry its burden to show it is entitled to summary judgment on the discrimination and failure-to-accommodate claims.   There is no genuine dispute of

13

material fact that in-person work is essential to a Specialist's job.[2]

B.    Retaliation

The City seeks summary judgment on the ADA retaliation claim as well.  It contends that Adams's claim of retaliation fails because she has not presented evidence of treatment that would be likely to dissuade an employee from engaging in protected activity or shown any causal link between her request for an accommodation or her filing of a complaint and any adverse action taken by the DANY.  In making both arguments, the City relies on evidence that it contends shows that the accommodations it offered Adams were reasonable.

There is no dispute about the underlying facts, which have been described above.  Adams has failed to offer any evidence that DANY retaliated against her for either her October 20, 2020 accommodation request or her November 6, 2020 filing with the SDHR and EEOC.  After denying her request to work exclusively from home, DANY allowed Adams to continue as an employee and afforded her the option to use leave time to cover the days when she was scheduled to be in the office.  It was an essential

---

[2]  Adams makes evidentiary objections to defendants' submissions of a declaration by EEO Officer Nitin Savur as well as other internal emails and personnel files.  Because summary judgment is awarded solely on facts that Adams has admitted, these arguments need not be considered.

component of Adams's job that she perform work in person. Therefore, DANY's decision to require Adams to come to its offices to work on at least a few days each week was not retaliatory.

Adams argues in opposition to this motion that she suffered an adverse action -- a material loss of benefits and significantly diminished responsibilities -- after she requested a remote work accommodation on October 20, 2020.  In her deposition, Adams could not remember how often she went into the DANY offices thereafter and estimated that she worked only one to two days a week from home.  She used sick and annual leave time on scheduled in-person workdays after her FFCRA/FMLA days expired.  Adams's argument that she suffered retaliation fails. Adams has conceded that key elements of her job required in person attendance at the office.  Therefore, it was not retaliatory to require Adams to use personal leave when she declined to come to DANY.  At bottom, DANY's decision to require Adams to perform essential functions of her job is not an adverse employment action under the ADA.

Finally, Adams cites Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 73 (2d Cir. 2000), to support her assertion that the "creation of intolerable" work conditions was an adverse employment action.  In Whidbee, employees of a

McDonald's franchise were subject to racially offensive comments. Id. at 67. Here, in contrast, DANY asked Adams to perform essential functions of her job as a Specialist, which required her to come to DANY offices.

## Conclusion

The defendants' May 30, 2025 motion for summary judgment is granted. The Clerk of Court shall enter judgment for the defendants and close the case.

Dated:    New York, New York
          January 23, 2026

_____
DENISE COTE
United States District Judge

16